### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM M. CUNNINGHAM, JR., *et al.*, )<br>  )<br>  Plaintiffs, )<br>  )<br>vs. )<br>  )<br>QBE SPECIALTY INSURANCE, *et al.*, )<br>  )<br>  Defendants. ) | CIVIL ACTION NO. 1:23-cv-24-TFM-N |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is *Plaintiffs' Motion to Remand*. Doc. 10, filed February 16, 2023. Plaintiffs William M. Cunningham, Jr., and Kathryn N. Cunningham motion the Court remand this matter to the Circuit Court of Baldwin County, Alabama because they state a colorable claim of misrepresentation and fraud against Defendant Daniel Donohue, a non-diverse party in this action that was removed pursuant to the Court's diversity jurisdiction under a theory of fraudulent joinder. *Id*. Having considered the motion, response, reply, and relevant law, the Court finds the motion to remand is due to be **GRANTED**.

### I.   PROCEDURAL BACKGROUND

This matter was originally filed by Plaintiffs William M. Cunningham, Jr., and Kathryn N. Cunningham ("Plaintiffs") in the Circuit Court of Baldwin County, Alabama on December 8, 2022. Doc. 1-1 at 2-18. In the Complaint, Plaintiffs bring claims of breach of contract, bad faith failure to pay, and misrepresentation and fraud against Defendants QBE Specialty Insurance Company ("QBE") and Daniel T. Donohue, Jr., ("Donohue") (collectively, "Defendants"). *Id.* Plaintiffs also seek a declaratory judgment as to certain coverage that is described in the insurance policy that is at issue in this matter. *Id.* On January 18, 2023, QBE timely removed this matter to

this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. Doc. 1; *see* 28 U.S.C. § 1446(b); Doc. 1 at 44-48. QBE argues Donohue was fraudulently joined in this matter to defeat this Court's jurisdiction. Doc. 1 at 3-14.

On February 16, 2023, Plaintiffs filed the instant motion to remand. Doc. 10. QBE timely filed its response and Plaintiffs their reply. Docs. 11, 12, 14, 15. The motion to remand is fully briefed and ripe for review, and the Court finds oral argument unnecessary.

## II.   FACTUAL ALLEGATIONS

Plaintiffs allege they are residents or Georgia, QBE is a surplus line insurance carrier that is authorized to do business in Alabama and has its principal place of business in North Dakota, and Donohue is a resident of Georgia.[1]  Doc. 1-1 at 3-4.

Plaintiffs allege, when the underlying acts of this litigations occurred, their property that is located at 6434 County Road 95, Elberta, Alabama ("the Elberta property"), was insured under QBE policy number 0UA10017637-01 ("the policy"), which was effective between June 9, 2020, through June 9, 2021. *Id*. Plaintiffs allege the Elberta property consists of two dwellings, a main house and a guest house that are connected by an elevated walkway and are considered one dwelling for the purposes of insurance and regulations. *Id.* at 4.

Plaintiffs allege, on September 16, 2020, they sustained insured losses due to Hurricane Sally. *Id.* Plaintiffs allege QBE determined a replacement cost value ("RCV") of the damage and issued a payment for the actual cash value ("ACV") of the damage, which deducted from the RCV mitigation costs, depreciation, and the policy deductible. *Id.* at 4. Plaintiffs allege they disputed the ACV payment covered their losses and did not accept the payment then hired professionals to

---

[1] QBE's corporate disclosure statement states it is a corporation that is a citizen of North Dakota and New York. Doc. 6.

determine their own ACV amount.  *Id.* at 5.

Plaintiffs allege QBE hired a contracting firm to review Plaintiffs' claims and issued a payment to Plaintiffs that was based on an updated RCV.  *Id.*  Plaintiffs allege they disputed the new payment was adequate and claimed additional expenses under the policy.  *Id.* at 5-6.

Plaintiffs allege they emailed Donohue on June 2, 2022, and claimed QBE owed policy limits and requested, if QBE disagreed with their claim, to explain and send supporting materials.  *Id.* at 7.  Plaintiffs allege they emailed a letter on June 3, 2022, that described the policy provisions with which QBE failed to comply and requested they be properly compensated under such provisions.  *Id.*  Plaintiffs allege they did not receive a response to their inquiries about the deficient payments.  *Id.*

Plaintiffs allege, due to the prohibitive cost of repairs to the Elberta property, they sold the property on July 19, 2022, then relocated to Rossville, Georgia.  *Id.*

Plaintiffs allege they sent Donohue another letter on August 29, 2022, in which they attempted to resolve their dispute with QBE and advise they moved.  *Id.*  Plaintiffs allege Donohue replied to their letter via email in which he claimed QBE paid the proper amount for their claims and requested they send receipts for additional expenses that they claimed were covered under the policy.  *Id.* at 7-8.  Plaintiffs allege they sent a letter via email to Donohue on September 6, 2022, in which they provided an internet address at which he could access the requested receipts.  *Id.* at 8.  Plaintiffs allege QBE has not paid the full amount of their additional expenses that are evidenced by their receipts nor what is otherwise owed under the policy.  *Id.* at 9-10.

### III.  STANDARD OF REVIEW

> An action in state court may be removed to federal court when the federal courts have diversity or federal question jurisdiction.  *See* 28 U.S.C. § 1441(a). When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are

> citizens of the state in which the suit was filed. *See Lincoln Prop. Co. v. Roche*, [546 U.S. 81] (2005) (*citing* 28 U.S.C. § 1441(b)). Such a remand is the necessary corollary of a federal district court's diversity jurisdiction, which requires complete diversity of citizenship.
>
> When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id*. The defendant must make such a showing by clear and convincing evidence. *See Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).

*Henderson v. Wash. Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The burden of proving fraudulent joinder is a heavy one that requires the Court to evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *Crowe*, 113 F.3d at 1538. The court must make "these determinations based on the plaintiff's pleadings at the time of removal" but may "consider affidavits and deposition transcripts submitted by the parties." *Id.*

"The proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56." *Legg v. Wyeth*, 428 F.3d 1317, 1322–23 (11th Cir. 2005) (citations omitted). In making this determination, the Court considers "the plaintiff's pleadings at the time of removal, *supplemented by any affidavits . . . submitted by the parties*." *Id.* (emphasis in original) (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998)). But, even so, "the jurisdictional inquiry 'must not subsume substantive determination.'" *Crowe*, 113 F.3d at 1538 (quoting *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548-49 (5th Cir. Unit A Dec. 1981)). "When considering a motion for remand, federal

courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538 (citing *B, Inc.*, 663 F.2d at 548-49); *see also Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." (emphasis in original)).

## IV.   DISCUSSION AND ANALYSIS

Plaintiffs argue Defendants have not met their burden to show there is no possibility that Plaintiffs are able to establish a cause of action against Donohue, and Plaintiffs argue they allege a colorable claim of misrepresentation and fraud against Donohue.  Doc. 10 at 4-7.

In response, QBE argues Plaintiffs fail to show there is a reasonable possibility that they can prove a cause of action against Donohue and have failed to state with particularity the circumstances that constitute the alleged misrepresentations in compliance with Fed. R. Civ. P. 9(b).  Doc. 14 at 5-15.  As to whether Plaintiffs properly allege a misrepresentation, QBE argues Plaintiffs' allegation on which it bases their misrepresentation claim is consistent with the terms of the policy and, therefore, is not a misrepresentation, Plaintiffs do not allege they submitted covered expenses, Plaintiffs' supplemental evidence that was submitted with their motion to remand should be disregarded because it is not alleged in their complaint, Plaintiffs attempt in their motion to remand to expand the allegations in their complaint to include a misrepresentation as to other coverage under the policy, and Plaintiffs' misrepresentation claim is actually a claim for promissory fraud, which is not properly alleged.  *Id.* at 6-12.  As to whether Plaintiffs properly allege their reliance on the alleged misrepresentation, QBE argues they cannot establish they took actions that would have been different but for their reliance on the alleged misrepresentation.  *Id.* at 12-14.  Finally, as to whether Plaintiffs properly allege they were damaged by the alleged

misrepresentation, QBE argues the damage they claim in their motion to remand-delayed filing of their instant action-is not alleged in their complaint. *Id.* at 14-15.

Under Alabama law, "[t]he elements of a misrepresentation claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was reasonably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." *Bryant Bank v. Talmage Kirkland & Co., Inc.,* 155 So. 3d 231, 238 (Ala. 2014) (citations omitted).

Further, since a claim for misrepresentation constitutes legal fraud under Alabama law, such a claim is subject to Fed. R. Civ. P. 9(b)'s heightened-pleading standard for fraud claims. *See Bryant Bank*, 155 So. 3d at 235 ("A negligent misrepresentation constitutes legal fraud." (citation omitted)). Fed. R. Civ. P. 9(b) provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

> "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). The application of Rule 9(b), however, "must not abrogate the concept of notice pleading." *Id.* Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in which documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (internal quotation omitted).

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

The Plaintiffs' allegations against Donohue, which are noted by Plaintiffs and QBE in their respective briefs, are as follows:

3.   Daniel T. Donohue, Jr. ("Donohue") is a resident citizen of Georgia, and at all material times referenced in this Complaint was acting in the line and scope of his authority as an agent, servant, or employee of QBE.

. . .

11.   After receiving this payment, on May 18, 2022, Plaintiffs complained to QBE/Donohue that the payments were not adequate as the dwelling was a total loss/constructive loss under Alabama law.[2]  Plaintiffs also advised that they had additional claims under Coverages C and D involving expenses [in]curred during the 22 months Plaintiffs resided in the guest house on the insured premises.  *See infra*, paragraph 39.

12.   Donohue replied via email the same day that QBE had paid what is warranted and forwarded Plaintiffs' letter to MKA's representative.  The response from Donohue did not mention Coverages C and D.

13.   On May 19, 2022, Plaintiffs responded requesting that QBE/Donohue answer specific questions regarding policy provisions, the adequacy of Plaintiffs['] submissions, the failure to pay what was owed and further advised that MKA was not needed to address policy provisions.

14.   On May 20, 2022, Donohue replied via email that QBE has paid over the main policy limit at ACV based on the documented damages provided to QBE and that Plaintiffs' submissions were not proven reasonable.  He further asked that Plaintiffs work with the MKA representative.  Donohue did not answer or even refer to the specific questions.  Again, Donohue also did not address Plaintiffs' claims under Coverages C and D.

. . .

16.   The MKA representative advised he sent his report to Donohue on May 27, 2022.  Having not heard anything, Plaintiffs emailed Donohue on June 2, 2022, explaining Plaintiffs['] understanding of the ordinance and law coverage and claiming QBE owes policy limits of $730,000 under Coverage A.  Plaintiffs also requested that if QBE disagrees, for someone to explain who and to send the policy excerpt(s) explaining that position.

17.   In a letter dated June 2, 2022, but emailed June 3, 2022, Plaintiffs again laid out specific policy provisions that QBE failed to comply with and requested to be properly compensated under Coverages A, C and D.  The letter also noted that previously propounded questions had gone unanswered.  The letter asked that a response be made within 14 days.

---

[2] The Plaintiff, William M. Cunningham, Jr., handled all correspondence and contacts with Donohue, QBE and MKA on behalf of both Plaintiffs.

18. No response was received. Plaintiffs determined that without payment of the policy limits and considering that the cost to elevate was prohibitive for them, Plaintiffs decided to sell and move from 6434 County Road 95, Elberta, Alabama. On July 19, 2022, a sale was consummated. Plaintiffs relocated to Rossville, Georgia.

19. On August 29, 2022, Plaintiffs sent another letter to Donohue in an attempt to resolve this dispute and to advise of the move. Claims were reiterated for payment under Coverages A, C, and D.

20. On August 30, 2022, Donohue replied via email. He addressed the code coverage and claimed QBE had paid full RCV.[3] Donohue further requested for Plaintiffs to send in receipts for anything that Plaintiffs felt are owed under any of the coverage. In regards to Coverage D, he requested the Plaintiffs send him any expenses incurred staying someplace else and QBE would reimburse up and until the home is sold.

21. In response to that request and after hours of research and in lieu of spending time on his legal practice, on September 6, 2022, the Plaintiff, William M. Cunningham, Jr. sent Donohue a letter via email which contained a Dropbox link with copies of receipts for reimbursed expenses of $22,964.25 incurred while Plaintiffs resided in the guest house for 22 months, an explanation of why Coverage D was owed for living in the guest house as opposed to the main house and an explanation of the Coverage A claim. Following is a summary of that letter:

   a. These receipts included payments for similar personal property matters that Plaintiffs had been reimbursed for in December 2020 and expenses for protecting the dwelling.

   b. Plaintiffs explained that they were entitled to recover the policy limits of Coverage D because for 22 months they did not/could not maintain their normal standard of living.

   c. Under Coverage A, Plaintiffs made it clear they were not seeking RCV-their claim had always been for ACV. In support of Coverage A claim, Plaintiffs attached a worksheet and the original builder's ACV rebuild estimate of $1,019,680.[4] Plaintiffs then explained that they used published historic construction information – known rebuilt cost times economic/rebuild factors and factored in depreciation using in the same depreciation factor applied by MKA

---

[3] Plaintiffs replied that it was assumed Donohue meant ACV. No response was received to that inquiry.

[4] This estimate had previously been provided to Donohue/QBE on August 30, 2021 with the detailed claim package.

in its estimate. This calculation resulted in a total ACV loss of $853,819.34. After credit for the flood insurance payment of $41,240.86, the ACV due from QBE is $812,578.48. Since that figure is more than the $730,000 limits of liability, QBE owes the Plaintiffs $142,161.71 ($730,000-$578,838.29 paid) under Coverage A.

22. On September 7, 2022 Donohue replied via email: "We have paid out the full Coverage A policy limit at this time to you in our March 16, 2022 payment for [sic]. At this time all that is pending is the proof of the rebuild and then you are entitled to collect the additional coverage available under the policy for the dwelling." Donohue made no reference regarding the receipts provided, Coverage C, or Coverage D.

23. Despite the promise to pay upon receiving receipts, no payments were made. The only payments for Coverage C were made in December 2020-$9,002.17-and November 2021-$1,500-for a total of $10,502.17. A $446.67 payment for Coverage D was also made in December 2020.

. . .

33. In addition, Plaintiffs submitted invoices and canceled checks supporting payments for $1,100 to repair HVAC duct work in the guest house and $2,350 to maintain tarps on the dwelling. QBE and Donohue have failed to acknowledge those expenses or made any effort to reimburse the Plaintiffs.

. . .

35. Plaintiffs are entitled to payment Coverage C under these policy provisions:
    a.   C.   Coverage C – Personal Property
           1.   Covered Property
        We cover personal property owned or used by an "insured" while it is anywhere in the world.

36. In December 2020 QBE paid $9,002.17 for cleaning, moving and storage of personal property. An additional payment of $1,500 was made in November 2021 to reimburse Plaintiffs who paid for a Matterport inspection requested by QBE. Since those payments were made and while Plaintiffs resided in the guest house, Plaintiffs have incurred additional similar costs totaling $19,514.25.

37. On September 6, 2022, Plaintiffs submitted a demand to QBE and its adjuster, Daniel Donohue for reimbursement of the $19,514.25 with accompanying invoices, receipts and checks. Neither QBE nor Donohue have responded to the Coverage C demand.

38. Plaintiffs are entitled to payment Coverage D under these policy provisions:

      a.      D.      Coverage D – Loss of Use
The limit of liability for Coverage D is the total limit for the coverages in
1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits
Use below.
1. Additional Living Expense
If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

39. Plaintiffs' dwelling consists of two structures connected by an elevated walkway-porch – the main house, approximately 3,800 square feet and the guest house, approximately 800 square feet. The main house was rendered totally uninhabitable. The guest house was partially repaired allowing the Plaintiffs to reside there for 22 months.

40. During those 22 months, Plaintiffs were not able to maintain their normal standard of living.

41. During those 22 months, Plaintiffs paid the mortgage. Monthly mortgage payments were not reduced because Plaintiffs were living in 18% of the dwelling instead of 100%. Plaintiffs made $59,019.72 in mortgage payments during those 22 months. 82% of those payments protected the property from foreclosure. Under Coverage D, Plaintiffs are entitled $48,396.17 (82% x $59,019.72) as an increase in living expenses due to their inability to maintain their normal standard of living. The policy limits of $40,000 (less $446.67 previously paid) is due under Coverage D.

42. Throughout the frustrating claims process, Plaintiffs have suffered worry and concern, emotional distress, and spent an inordinate [sic] of time and effort away from normal activities including William M. Cunningham, Jr.'s law practice.

43. In summary, Plaintiffs are entitled to

. . .

      b.      to an additional $19,514.25 under Coverage C;
      c.      to an additional $39,533.33 under Coverage D;

. . .

> 54. Plaintiffs adopt the allegations contained in paragraphs 1 through 25, 35 through 43 by reference as if fully set out herein.
>
> 55. On or about the 30th day of August 2022, Donohue on behalf of QBE represented to the Plaintiffs to send in receipts for anything that Plaintiffs felt were owed under any of the coverage. In regard to Coverage D, he advised the Plaintiffs to send him any expenses incurred staying someplace else and QBE would reimburse up and until the home is sold.
>
> 56. Plaintiffs believed and relied on these representations and on September 6, 2022, sent Donohue a letter via email which contained a Dropbox link with copies of receipts for unreimbursed expenses of $22,964.25 and an explanation of why Coverage D was owed. The receipts, invoices and checks for personal expenses were similar to those QBE had reimbursed the Plaintiffs in the past. No payment has been made.
>
> 57. The representations made by Defendant Donohue in his capacity as an agent, servant or employee of QBE were false representations of material facts, made willfully to deceive, recklessly, without knowledge, or mistakenly which were justifiably relied on by the Plaintiffs under the circumstances, and caused damages as set forth above as a proximate consequence.

Doc. 1-1 (footnotes omitted).

In support of Plaintiff's motion to remand, they submit Mr. Cunningham's affidavit in which he describes email correspondence with a QBE claims adjuster, Shavonne Jones, that are attached to his affidavit. Doc. 10-1 at 1-14. A bill for moving expenses are also attached to the affidavit. *Id.* at 15. Further, Mr. Cunningham states in his affidavit he relied on Donohue's August 30, 2022 emails, Donohue's statements in the emails were consistent with his understanding of QBE's obligations under the policy and QBE's payment of similar expenses, and he forbore filing suit in this matter based on his reliance on Donohue's representations. *Id.* at 2. Finally, Mr. Cunningham states his and Mrs. Cunningham's efforts to resolve their insurance claim have caused them extreme anxiety. *Id.*

As an initial matter, the Court does not believe, under the applicable standard of review, it is required to review whether Plaintiffs' misrepresentation claim meets the heightened pleading

requirement for fraud claims that is required under Fed. R. Civ. P. 9(b) since the Court's review is limited to whether their allegations state a claim that is arguable under state law.[5]  In any case, a party whose claim does not meet the heightened pleading requirement would be allowed by the ruling court to replead the claim.

As to the applicable standard of review, drawing all reasonable inferences from the record in Plaintiffs' favor and resolving all contested issues of fact in favor of Plaintiffs, the removing defendant, QBE, has failed to satisfy its heavy burden to establish Plaintiffs did not state a claim against Donohue or they have no possibility to state a claim against Donohue.  The Court notes, while QBE argues Plaintiffs' misrepresentation claim is a claim for promissory fraud, Defendants are on notice of the allegations that constitute Plaintiffs' claim whether it survives as a claim for misrepresentation or promissory fraud.

Therefore, the Court finds Donohue is a properly joined defendant in this matter whose citizenship destroys diversity of citizenship amongst the parties, and this matter should be remanded to the Circuit Court of Baldwin County, Alabama.

## V.    CONCLUSION

Accordingly, Plaintiff's Motion to Remand (Doc. 5) is **GRANTED** and this matter is **REMANDED** to the Circuit Court of Baldwin County, Alabama.  Defendant Daniel T. Donohue, Jr.'s, *Motion to Dismiss* (Doc. 8) remains pending for the state circuit court to resolve.

---

[5] While QBE cites both the applicable federal rule, Fed. R. Civ. P. 9(b), and the related state rule, Ala. R. Civ. P. 9(b), which are identical in their requirements, the Court applies the Federal Rules of Civil Procedure in diversity actions.  Doc. 14 at 6; *compare* FED. R. CIV. P. 9(b) *with* ALA. R. CIV. P. 9(b); *see Royalty Network, Inc. v. Harris*, 756 F.3d 1352, 1357 (11th Cir. 2014) ("It is well established that when a federal court considers a case that arises under its diversity jurisdiction, the court is to apply state substantive law and federal procedural law." *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 1141, 14 L. Ed. 2d 8 (1965)).

**DONE** and **ORDERED** this 15th day of June 2023.

>/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE